**IN THE COURT OF APPEALS OF IOWA**

No. 18-0546
Filed July 5, 2018

**IN THE INTEREST OF K.R. and K.R.,**
**Minor Children,**

**K.R., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof,

District Associate Judge.

        A mother appeals from termination of her parental rights to two children.

**AFFIRMED.**

        Barbara E. Maness, Davenport, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Rebecca Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, guardian ad

litem for minor children.

        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Kendall is the mother of K-e.R. and K-n.R, aged five and three.[1] She challenges the order terminating her parental rights. She argues the State failed to offer sufficient proof the children could not be returned home; the Iowa Department of Human Services (DHS) did not make reasonable efforts to reunite the family; and termination was not in the children's best interests. On our de novo review of the record, we affirm.[2]

The DHS removed K-e.R. and K-n.R. from their mother's custody in June 2017 when Kendall and her paramour were charged with possession with intent to deliver a controlled substance. They had cocaine, heroin, marijuana, and drug paraphernalia in their home within easy reach of the children. K-e.R. tested positive for cocaine and tetrahydrocannabinol; the concentration of cocaine was so high, it is likely he ingested it. K-n.R. could not be tested because his hair was too short. Kendall admitted smoking marijuana around the children. She was convicted of felony child endangerment. The DHS returned a founded child abuse assessment against Kendall for both denial of critical care and presence of illegal drugs in a child's body. The DHS placed the children with Kendall's sister, Angela, where they have remained throughout the case.

---

[1] K-n.R.'s father is deceased. K-e.R.'s father was not involved in this case.

[2] We review child welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings but give them weight, especially when witness credibility is a key consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). As the petitioning party, the State must offer clear and convincing proof, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

After her release from jail, Kendall moved to Chicago and lost contact with the DHS. In its adjudicatory order, the court ordered the mother to establish a stable, drug-free home for the children; participate in drug testing; and apply for entry to Family Wellness Court. Although she made occasional telephone contact with DHS workers, Kendall said she did not intend to return from Chicago. She also occasionally saw the children with Angela's encouragement, but contact was irregular and infrequent. Kendall moved frequently and did not keep in touch with DHS or take steps to participate in supervised visitation or ordered services. At the time of the termination hearing, the DHS did not know her whereabouts or phone number.

The court terminated Kendall's parental rights under Iowa Code section 232.116(1), paragraphs (b),[3] (d),[4] and (e)[5] (2017). On appeal, Kendall advances

---

[3] "The court finds that there is clear and convincing evidence that the child has been abandoned or deserted." Iowa Code § 232.116(1)(b).

[4] The court finds that both of the following have occurred:

   (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

   (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Id. § 232.116(1)(d).

[5] The court finds that all of the following have occurred:

   (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

   (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

   (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact"

three arguments. First, she contends the State did not offer sufficient proof the children could not be returned safely to her home. Kendall appears to contest the grounds for termination under paragraphs (f) or (h) of section 232.116(1), both of which require such proof. But Kendall's parental rights were terminated under the elements set out in paragraphs (b), (d), and (e)—none of which require proof the children could not be returned safely to her home. Because she does not dispute the existence of grounds for termination under paragraphs (b), (d), and (e), we need not discuss them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Moreover, she has waived any challenge to the sufficiency of those grounds, and we affirm the juvenile court's findings. Iowa R. App. P. 6.903(2)(g)(3); *see Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

Next, Kendall contends the DHS did not make reasonable efforts to reunify her family but does not specify what additional efforts she requested before the termination hearing or any she might request now.[6] Kendall told her attorney she

---

includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.* § 232.116(1)(e).

[6] The DHS is required to exert every reasonable effort to return children to their home—consistent with their best interests. Iowa Code § 232.102(6)(b). "Reasonable efforts" include services offered to eliminate the need for removal or to make it possible for the children to safely return to the family home. *Id.* While the reasonable-efforts burden rests with DHS, parents also shoulder a responsibility to object if they believe the nature or extent of services is inadequate. *In re L.M.,* 904 N.W.2d 835, 839-40 (Iowa 2017) (emphasizing a parent's objection should be made as early as possible so the juvenile court can order appropriate changes).

didn't take action to reconnect with her children because she had been informed by her sister, Angela, that she already lost her parental rights, which Angela denied. The juvenile court found Angela more credible, and the record is replete with evidence Kendall chose not to cooperate with DHS or participate in services throughout this case for her own reasons, despite reasonable efforts by DHS.

Finally, Kendall contends termination is not in the children's best interests because of the parent-child bond. Kendall claims even if she "may have some shortcomings," the State did not present evidence to suggest she would subject the children to harm. And she asserts the State has not shown she is unable to meet their needs. We disagree with her contentions.

Kendall did not participate in services or otherwise demonstrate to the DHS or the juvenile court that she is capable of parenting these young children. The children are doing well in their aunt's care. K-n.R. has behavioral and developmental delays, but a provider noted Angela appears "able to give him the special attention and skill building he needs." Angela and her husband are willing to adopt the children. Giving "primary consideration" to the children's safety; to the best placement for their long-tern nurturing and growth; and to their physical, mental, and emotional condition and needs; we conclude their best interests are served by termination of Kendall's parental rights. Iowa Code § 232.116(2). Finally, there is no demonstrable bond between Kendall and the children; she has never participated in supervised visitation, and her informal interactions have been sporadic. *See id.* § 232.116(3)(c). The juvenile court found she abandoned the

children, a finding Kendall does not dispute. *See* Iowa Code § 232.116(1)(b) (abandonment), (e) (failure to maintain significant and meaningful contact). We affirm all findings of the juvenile court.

**AFFIRMED.**